FILED

14 MAR 28 PM 3:11

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN RYAN, an individual, on behalf of himself and all others similarly-situated,<br><br>　　　　　　　　　Plaintiff,<br>vs.<br><br>JERSEY MIKE'S FRANCHISE SYSTEMS, a New Jersey corporation; KENNY BROTHERS, INC., dba JERSEY MIKE'S SUBS, a California corporation; CLUB TEXTING, INC. dba EZ TEXTING, INC., a New York corporation; SKYPOP PARTNERS, LLC, a Delaware limited liability company; and DOES 1 though 50,<br><br>　　　　　　　　　Defendants. | CASE NO. 13-CV-1427-BEN (WVG)<br><br>**ORDER GRANTING MOTION TO DENY CLASS CERTIFICATION**<br><br>[Docket No. 45] |

Before this Court is a Motion to Deny Class Certification filed by Defendants Jersey Mike's Franchise Systems (Jersey Mike's) and Kenny Brothers, Inc. (Kenny Brothers) (collectively, "Movants"). (Docket No. 45). For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

I. Facts Giving Rise to the Lawsuit

Jersey Mike's Franchise Systems (Jersey Mike's) is a franchisor of sandwich shops throughout the United States. Kenny Brothers, Inc. is a Jersey Mike's franchisee which operates a sub sandwich shop in Solana Beach, California.

Jersey Mike's has a customer loyalty program known as the "Jersey Mike's Shore Points" in which it issues customers loyalty cards that they can use to earn and redeem "loyalty points" for free products. Each card has a unique bar code number and is linked in a database to a telephone number provided by the customer when the card is issued. (Mot. at 2; Scherer Decl. ¶ 4). Movants state that they do not buy telephone numbers or lists, and that the only numbers in their records are numbers provided by their customers. (*Id.*; Scherer Decl. ¶¶ 4, 5, 6; Miller Decl. ¶ 7).

Jersey Mike's and Kenny Brothers state that they send text messages, via Defendant SkyPop Partners, LLC, to customer cellular telephones to advertise promotions. (Mot. at 2). They state that messages are only sent to members of the loyalty program who gave their cell phone numbers to Jersey Mike's and its franchisees. (*Id.*; Scherer Decl. ¶ 9, Miller Decl. ¶ 7).

Movants assert that Plaintiff was issued a loyalty card on May 16, 2013 by a server on duty at the Solana Beach store. (*Id.*) The bar code was linked to Plaintiff's cell phone number. (*Id.*). Plaintiff admits that he was given a loyalty card on one of his visits to the store. (Ryan Dep., Dawson Decl., Ex. A).

Movants state that Jersey Mike's caused a promotional text message to be sent to the cell phones of 7,659 customers of the Solana Beach store on May 28, 2013. Plaintiff was one of the customers who received the text message. The text message advertised that "Jersey Mikes Solana" was having a double loyalty points day, and offered free chips and a drink with the purchase of any sub. (FAC ¶ 23). The message also stated "Reply STOP to opt-out of Member Texts." (*Id.*) Plaintiff replied "STOP" to the message, and received no further texts beyond confirmation that no further texts would be sent. (Scherer Decl. ¶ 11).

II. Allegations in the First Amended Complaint

Plaintiff Sean Ryan filed a First Amended Complaint on September 11, 2013, seeking damages and injunctive relief on behalf of himself and all others similarly-situated. (Docket No.17).

Plaintiff alleges that Movants transmit unauthorized bulk spam text messages to the cellular phones of unwilling customers in order to promote the Solana Beach shop. (FAC ¶ 3). Movants allegedly use SkyPop Partners and Club Texting, Inc. to do so. Plaintiff alleges that these text message are aggravating and require consumers to pay their cell phone providers to receive the spam messages. (*Id.* ¶ 5).

Plaintiff claims that Movants assembled lists of consumer cell phone numbers, "without any authorization" to use the numbers. (*Id.* ¶ 20). Plaintiff alleges that the defendants sent "massive amounts of spam commercial text message advertisements, using auto-dialers or robo-callers." (*Id.* ¶ 21). He alleges that Jersey Mike's Franchise Systems has given its express or ostensible consent and authority for the illegal campaign. (*Id.*)

Plaintiff specifically alleges that in May 2013, Movants used an automatic telephone dialing system to send spam commercial text messages to users, including Plaintiff. (*Id.* ¶ 22). Plaintiff alleges that the texts were sent to mobile phone users with whom the defendants had "no prior business relationship." (*Id.* ¶ 24). Plaintiff states that "At no time did Plaintiff consent to the receipt of such text message calls from Defendants or their partners." (*Id.* ¶ 25).

Plaintiff states that he brings his action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and a nationwide class consisting of: "All persons in the United States and its Territories who were sent one or more unauthorized text message advertisements by or on behalf of Defendants." (*Id.* ¶ 26).

Plaintiff also states that he brings the action on behalf of himself and a class or sub-class under California Code of Civil Procedure Section 382. This proposed class consists of: "All persons in the State of California who were sent one or more unauthorized text message advertisements by or on behalf of Defendants." (*Id.* ¶ 27).

Plaintiff indicates that he might seek to expand or narrow the class definitions following investigation and additional discovery. (*Id.* ¶ 28).

### III. Plaintiff's Allegations Regarding Provision of His Phone Number

Review of the Complaint indicates that Plaintiff alleges that the defendants did not have authorization to send the text message, but does not clearly indicate whether Plaintiff ever provided his phone number, or if he alleges that providing the phone number would not authorize the text messages. The provision of the phone number is an important factor, as will be discussed below.

Plaintiff testified under oath in a deposition concerning his phone number and how he obtained a Jersey Mike's loyalty card.

> Q: Did you – did the cashier ask you for your telephone number?
> A: No.
> Q: Did you provide the cashier with your telephone number?
> A: No.

(Ryan Dep. at 16:3-8).

> Q: Did you get the sandwich?
> A: Got the sandwich.
> Q: When did you get the sandwich?
> A: I got the sandwich. Then she handed me the card. I gave her the punch-out card. She handed me the sandwich and then handed me the card.
> Q: And no conversation happened, whatsoever. That's your testimony?
> A: That's my testimony.
> Q: How did Jersey Mike's get your phone number?
>     [Plaintiff's counsel]: Calls for speculation.
> A: I have no idea.

(Ryan Dep. at 24:5-16).

> Q: And it's your memory that other than taking your order for the sandwich and taking your – your card, she didn't say anything else to you, right?
> A: Not to my memory, no.
> Q: She didn't ask you for your phone number?
> A: No.

(Ryan Dep. at 33:13-18).

> Q: So it's your sworn testimony that you never gave Jersey Mike's your phone number?
> A: Yes.

(Ryan Dep. at 33:25-34:2).

In his Opposition to the Motion to Deny Class Certification, Plaintiff submits a sworn declaration about the provision of his phone number. (Ryan Decl., Docket No. 48-7). He states that:

> I do not remember ever giving my phone number to Jersey Mikes, but I am not 100% sure. I suppose it's possible. If Jersey Mike's, at my deposition, would have asked me if I was "sure" that I didn't give them my phone number at their store, I would have answered "no" — that I was not sure.

(Ryan Decl. ¶ 2). Plaintiff further stated that he does not have a practice of memorizing or writing down normal interactions with fast food attendants, and that he believes that this makes him a "*more* typical consumer, not less typical." (*Id.* ¶ 3).

## PROCEDURAL HISTORY

Plaintiff commenced this action on June 19, 2013 and filed the operative complaint on September 11, 2013. Discovery in this matter was initially limited by the U.S. Magistrate Judge. (Docket No. 33). The Scheduling Order requires Plaintiff to file his Motion for Class Certification by June 9, 2014 and requires that discovery be completed by November 30, 2014. (Docket No. 42).

## LEGAL STANDARD

### I. Class Actions

Federal class action lawsuits are authorized by Federal Rule of Civil Procedure 23. Members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). The party seeking certification must also provide a "workable" class definition by showing that members of the class are identifiable. *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 576 (S.D. Cal. 2013) (citation omitted).

The typicality requirement is to "assure that the interest of the named representative aligns with interests of the class." *Hanon v. Dataproducts Corp.*, 976

F.2d 497, 508 (9th Cir. 1992). In determining whether the typicality requirement is satisfied, a court determines "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

In addition to satisfying all four of the Rule 23(a) requirements, a class must also satisfy one of the Rule 23(b) requirements. Plaintiff asserts Rule 23(b)(2): "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff also asserts Rule 23(b)(3): "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

II. Class Action Certification

A court is required to determine whether or not to certify the action as a class action at "an early practicable time." FED. R. CIV. P. 23(c)(1)(A). Rule 23 is not a "mere pleading standard" and a party seeking class certification "must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). It may be necessary for a court to "probe behind the pleadings before coming to rest on the certification question." *Id.* (citation omitted). In making the class certification determination, a court is required to engage in "rigorous analysis." *Id.* (citation omitted). That analysis frequently entails "some overlap with the merits of the plaintiff's underlying claim." *Id.*

The Ninth Circuit has approved the use of preemptive motions to deny class certification before a plaintiff has filed a motion to certify a class. *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 941 (9th Cir. 2009). Such motions may be appropriately granted before discovery has been completed. *Id.* at 942. District courts

have "broad discretion" to control the class certification process and have the discretion to determine whether discovery will be permitted. *Id.* A party seeking class certification is "not always entitled to discovery on the class certification issue." *Id.* However, "the propriety of a class action cannot be determined in some cases without discovery." *Id.* (citation omitted). The "better and more advisable practice" for a district court is to give the litigants an opportunity to present evidence regarding whether a class action is maintainable. *Id.* (citation omitted). However, "[w]here the necessary factual issues may be resolved without discovery, it is not required." *Doninger v. Pac Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). A motion for class certification has been properly denied without discovery where plaintiffs could not make a prima facie showing of Rule 23's prerequisites or that discovery measures were likely to produce persuasive information substantiating class action allegations. *Id.* (denial proper where 23(a) requirements could not be met regardless of the discovery undertaken and there was no "reasonable probability" that any of the section (b) hurdles could be overcome).

This Court concludes that where a plaintiff has made a sufficient showing that discovery may produce evidence to support the certification of a class action, this Court will not deny a plaintiff the opportunity to do so. However, if it is apparent from the record before the Court that discovery will not permit a plaintiff to certify the proposed class, this Court will not permit a plaintiff to burden defendants with unnecessary and futile discovery requests.

III. Telephone Consumer Protection Act (TCPA) and California Claims

Plaintiff asserts claims under TCPA and related California statutes.

In relevant part, TCPA makes it illegal to make calls using any automatic telephone dialing system or an artificial prerecorded voice, other than a call for emergency purposes or with the "prior express consent of the called party," to any telephone number assigned to a cellular telephone service or any service for which the called party is charged for the call. *See* 47 U.S.C. § 227(b)(1)(A).

California Business & Professions Code Section 17538.41 prohibits a person or entity conducting business in California from transmitting or causing to be transmitted a text message advertisement. CAL. BUS. & PROF. CODE § 17538.41(a)(1). The statute has exceptions, including situations where a business has "an existing business relationship with the subscriber if the subscriber is offered an option not to receive text messages" from that sender, CAL. BUS. & PROF. CODE § 17538.41(c), or situations where an affiliate of a business that has an "existing relationship with the subscriber, but only if the subscriber has provided consent to the business with which he or she has that relationship to receive text messages from affiliates of that business," CAL. BUS. & PROF. CODE § 17538.41(d).

## DISCUSSION

I. The Parties' Arguments

Movants assert that undisputed facts demonstrate that a class cannot be properly certified in this matter. (Mot. at 1). They contend that amendment and discovery cannot cure the deficiencies. (*Id.*) Movants do not dispute that a text message is a call for purposes of the TCPA, or that the text was sent with an "automatic telephone dialing system." (*Id.* at 6). However, Movants assert that they have "prior express consent" to send the promotional text messages. Movants argue that the sole source of the phone numbers used by their text-messaging system is the information given to Jersey Mike's when a customer obtains a loyalty card. They contend that this suffices for consent. (*Id.* at 6-7).

Movants argue that Plaintiff's allegations and claims demonstrate that Plaintiff is in a different position than the class he seeks to represent. They argue that the other recipients of the text messages gave prior express consent by providing their phone numbers, but that Plaintiff has claimed that he never gave the defendants his phone number. Since Plaintiff claims he did not provide his phone number, his claims are different than those of other class members. Movants also argue that the class definition does not set forth an identifiable and ascertainable class, that the

commonality requirement is not met, that common questions do not predominate, and that the action cannot be certified under Rule 23(b)(2).

Plaintiff states in his Opposition and supporting declaration that he does not remember giving Jersey Mike's his phone number. (Opp'n at 2; Ryan Decl.). He argues that his inability to remember the details of a specific sandwich transaction make him more typical of the average customer, rather than less. (*Id.*) He states that he "believes he did not give his phone number up as part of that sandwich transaction but, admittedly, he is not sure." (*Id.* at 3). Plaintiff points out that Movants state that Ryan did give his phone number and that Movants present "significant evidence" to prove this. (*Id.*) In reply, Movants argue that Plaintiff is changing his allegations, citing Plaintiff's deposition testimony.

Plaintiff states that he requires additional discovery to flesh out the class certification issues. (*Id.* at 9). Plaintiff specifically points to efforts to obtain information about how phone numbers are selected, obtained, and stored; programming of Jersey Mike's default systems; Jersey Mike's general practices and policies regarding the sending of text messages to consumers; and the defendants' relationships to one another as it pertains to promotion and marketing campaigns. (*Id.*) Plaintiff also claims that investigating Jersey Mike's "webinars" will allow Plaintiff to examine the claim that Movants' practices and procedures make Plaintiff "an inexplicable anomaly." (*Id.* at 10 (citing Mot. at 3:23-28)).

II. Plaintiff's Claim Is Not Typical of the Class

This Court determines that class certification is inappropriate in this case because Plaintiff cannot represent the class. It appears that Plaintiff has weighed several potential legal theories, and has not yet set forth a proposed class definition in a motion for class certification. It is apparent, however, that Plaintiff cannot represent a class on any of his theories.

Plaintiff is fatally inconsistent and uncertain about critical issues relating to consent to receive text messages. These consent issues are critical to any theory of

recovery under the federal and state causes of action, both of which provide exceptions from liability (not necessarily co-extensive) based on consent. This Court has carefully reviewed the record in this matter, including the complaint, the briefing, Plaintiff's deposition, and Plaintiff's declaration in support of his Opposition to this Motion.

Plaintiff repeatedly and clearly stated under oath in his deposition that he did not provide his phone number. Plaintiff emphasizes the portions of the transcript in which Plaintiff states he does not remember his conversation with the cashier. However, Plaintiff repeatedly and without qualification states that he did not give out his phone number. Plaintiff was clearly aware that he could state that he did not remember a particular detail, and frequently did so, but indicated no doubt whatsoever that he had not given out his phone number. Although he indicated that he did not remember other parts of the conversation with the cashier, he did not indicate any doubt about the fact that he did not provide his phone number. His inability to recall other details has no bearing on his definitive statements that he did not provide his cell phone number.

Plaintiff now states, in his motion and in a sworn declaration, that he does not remember if he provided the number, but believes that he did not. This inconsistency and uncertainty renders class action treatment inappropriate.

To the extent Plaintiff seeks, as Movants suggest, to assert claims that individuals were "spammed" without ever giving their phone number to the defendants, a class cannot be certified. Plaintiff could not represent a class of individuals who did not give out their phone numbers because he now states that he is not sure that he did not give the defendants his phone number.

Plaintiff also cannot represent a class in claims based upon the fact that individuals were improperly defaulted into receiving text messages. The claims about default are premised upon the argument that default was inappropriate *for people who provided their number*. Plaintiff cannot argue that providing a phone number under these circumstances does not constitute consent for such advertising, while maintaining that he does not think he gave the number at all. Plaintiff's claim cannot be typical of

a class he does not believe he belongs to.

Plaintiff claims that his inability to be certain makes him more typical of the average consumer. It is indeed quite possible that most people would not remember such a detail. However, although this might be typical and quite understandable, it does not make Plaintiff an appropriate representative of a class or allow him to assert the rights of others on their behalf.

In determining whether the typicality requirement is satisfied, a court determines "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175. Plaintiff is uncertain about key interactions which are the basis of the dispute over express consent. Even if Plaintiff learns more in discovery about the course of conduct to which other potential members of the class have been subjected, he himself is unsure whether he was injured by the same course of conduct. Discovery will not allow him to resolve the uncertainty regarding his own experience.

If Plaintiff is unclear about what actions or statements he made that might constitute consent, he cannot properly litigate the question of whether other individuals consented within the meaning of the relevant statutes. Consent issues are at the very heart of Plaintiff's claims. This is not simply an sub-issue for which individualized analysis could be conducted while an action proceeds based on other common issues. The question about whether Plaintiff gave his number (or not) calls into question Plaintiff's standing to bring the claim *at all*. If Plaintiff gave his number, he cannot bring claims premised on the argument that people were wronged because they did not give their number. If Plaintiff did not give his number, he cannot bring claims premised on the argument that the company improperly sent messages to people who gave their number, but did not agree to text advertisements. In order to proceed with claims for text messages sent without consent, Plaintiff must assert some theory of what happened. If the class claims were not confined to individuals who had similar

interactions with the Defendants, maintaining a class action would be inappropriate and unworkable. *See Connelly*, 294 F.R.D. at 577-78 (stating that class certification in TCPA cases is warranted only when the unique facts of a case indicate that individual adjudication of prior express consent is unnecessary and denying class certification where telephone numbers were obtained under a variety of circumstances).

An inability to remember all details may be typical, but the typicality requirement of a class action lawsuit demands more. The typicality requirement exists to "assure that the interest of the named representative aligns with interests of the class." *Hanon*, 976 F.2d at 508. The named plaintiff in a class action carries a great burden to adequately litigate the rights of others, and failure to properly litigate those claims can harm innocent class members. "The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). This Court has a responsibility to protect the legal rights of putative class members by engaging in the rigorous scrutiny required by the Supreme Court before allowing a plaintiff to represent others. Plaintiff's conflicting accounts of critical facts that will determine what kinds of claims he can bring means that the necessary alignment of interests is impossible. This Court cannot certify a class with Plaintiff as the named plaintiff.

Although not raised by the parties, likely because the inconsistency arose in Plaintiff's response brief, the Court notes that Plaintiff's inconsistency on critical facts raises serious concerns about his credibility and his ability to adequately represent the class. *See, e.g., Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (district court reasonable in denying representative status where plaintiffs were vulnerable to serious attacks on credibility); *Jovel v. Boiron, Inc.*, No. 11-cv-10803, 2014 WL 1027874, at *4-5 (C.D. Cal. Feb. 27, 2014) (denying class certification where plaintiff gave inconsistent deposition testimony on material issue and plaintiff could jeopardize interests of the other class members if the jury did not believe him).

As this Court has resolved the Motion on typicality grounds, it need not address

- 12 -

13cv1427

Movants' other arguments.

## CONCLUSION

Upon review of the briefing filed by the parties and the record in this case, it is apparent that a class cannot be certified in this matter. This Court has considered Plaintiff's request to conduct additional discovery and file a motion for class certification. However, it is apparent from the facts before this Court that discovery will not yield additional facts that could change this conclusion, and that Plaintiff cannot define an appropriate class. Although Plaintiff can pursue such claims in an individual capacity, he cannot serve as a representative of absent class members. The Motion to Deny Class Certification is therefore **GRANTED**.

**IT IS SO ORDERED**.

Dated: March 27, 2014

HON. ROGER T. BENITEZ
United States District Judge